SERVICING RELATIONSHIP AGREEMENT,

dated as of September 10, 2008

between

COUNTRYWIDE HOME LOANS SERVICING LP

and

GREENPOINT MORTGAGE FUNDING, INC.

# TABLE OF CONTENTS
Page

<a>
</a>

<s>
</s>

ARTICLE 1     DEFINITIONS ................................................................................................. 1
ARTICLE 2     TRANSFER OF SERVICING ..................................................................... 11
    2.1     Initial Servicing Transfer ............................................................................... 11
    2.2     Flow Servicing Transfers .............................................................................. 11
    2.3     Conditions Applicable to All Servicing Transfers ........................................ 12
    2.4     Reliability of Information .............................................................................. 14
    2.5     Escrow Obligations ....................................................................................... 14
    2.6     MERS ............................................................................................................ 14
    2.7     Notices, Correspondence, Tax Bills, Insurance Premiums, etc. ................... 15
    2.8     Mortgage Loans in Litigation ....................................................................... 15
    2.9     Transfer of Loans from Subservicing to HFI Agreement ............................. 15
    2.10     Transfer of Loans from HFI to Subservicing Agreement ............................. 16
    2.11     Transfer of Servicing for Non-Active Mortgage Loans ............................... 16
    2.12     Transfer of Loans to Countrywide ................................................................ 16
ARTICLE 3     REPRESENTATIONS AND WARRANTIES OF GPM ........................... 16
    3.1     Due Organization .......................................................................................... 16
    3.2     Due Authorization; Binding Effect ............................................................... 17
    3.3     No Conflicts .................................................................................................. 17
    3.4     Ability to Perform ......................................................................................... 17
    3.5     Litigation and Claims ................................................................................... 17
    3.6     Consents ........................................................................................................ 17
ARTICLE 4     REPRESENTATIONS AND WARRANTIES OF COUNTRYWIDE ......... 18
    4.1     Due Organization .......................................................................................... 18
    4.2     Due Authorization; Binding Effect ............................................................... 18
    4.3     No Conflicts .................................................................................................. 18
    4.4     Ability to Perform ......................................................................................... 19
    4.5     Litigation and Claims ................................................................................... 19
    4.6     Consents ........................................................................................................ 19
ARTICLE 5     COVENANTS ............................................................................................. 19
    5.1     Reasonable Best Efforts ................................................................................ 19

# TABLE OF CONTENTS
(continued)

Page

| | | |
|---|---|---|
| 5.2 | Resignation by LaSalle | 19 |
| 5.3 | Relationship Management | 20 |
| 5.4 | On-line Services for GPM | 21 |
| 5.5 | On-line Services for Mortgagors | 22 |
| 5.6 | Financial Information, Reports, Notices, etc. | 24 |
| 5.7 | SAS 70 Reports | 25 |
| 5.8 | Continuity of Business | 25 |
| 5.9 | Compliance with Applicable Laws | 25 |
| 5.10 | Branding | 25 |
| 5.11 | Advances | 26 |
| 5.12 | Delinquent Mortgage Loans and REO Management | 27 |
| 5.13 | Credit Bureau Reporting | 28 |
| 5.14 | Access; Audit; Records Retention | 28 |
| 5.15 | Confidentiality; Privacy; Security | 30 |
| 5.16 | Restrictions on Use | 33 |
| 5.17 | Capital One Names | 34 |
| 5.18 | Subcontractors, Subservicers, Vendors and Limited Vendors; Assignment; Merger, Consolidation, Etc. | 34 |
| 5.19 | Licenses | 37 |
| 5.20 | Insurance | 37 |
| 5.21 | Servicing Levels | 38 |
| 5.22 | Defaults under Securitization Agreements | 38 |
| 5.23 | Servicer Ratings | 38 |
| 5.24 | FNMA/FHLMC | 38 |
| 5.25 | MERS | 39 |
| 5.26 | Prohibition on Countrywide on Successor Servicer | 39 |
| 5.27 | Countrywide to Cooperate | 39 |
| 5.28 | Deposit Accounts | 39 |
| 5.29 | Nonservicing Obligations | 40 |
| ARTICLE 6 | COMPENSATION AND FEES | 40 |

# TABLE OF CONTENTS
(continued)

Page

| | | |
|---|---|---|
| 6.1 | Subservicing Fees and Compensation | 40 |
| 6.2 | HFI Servicing Fee and Compensation | 40 |
| 6.3 | Additional Compensation | 40 |
| 6.4 | Other Fees | 41 |
| 6.5 | Payments due to GPM | 41 |
| 6.6 | Certain Termination Fees | 41 |
| 6.7 | Invoicing and Payment | 42 |
| 6.8 | Monetary Disputes | 42 |
| ARTICLE 7 | CLOSING | 43 |
| 7.1 | Closing | 43 |
| 7.2 | Deliveries by GPM | 43 |
| 7.3 | Deliveries by Countrywide | 43 |
| ARTICLE 8 | CONDITIONS PRECEDENT TO CLOSING | 43 |
| 8.1 | Conditions to Obligations of GPM | 43 |
| 8.2 | Conditions to Obligations of Countywide | 44 |
| ARTICLE 9 | TERMINATION PRIOR TO CLOSING | 45 |
| 9.1 | Termination | 45 |
| 9.2 | Effect of Termination | 46 |
| ARTICLE 10 | TERMINATION AFTER CLOSING | 46 |
| 10.1 | Mutual Termination | 46 |
| 10.2 | Termination by GPM | 46 |
| 10.3 | Termination by Countrywide | 47 |
| 10.4 | Effect of Termination | 48 |
| ARTICLE 11 | INDEMNIFICATION | 48 |
| 11.1 | Survival | 48 |
| 11.2 | Indemnification by GPM | 48 |
| 11.3 | Indemnification by Countrywide | 49 |
| 11.4 | Claims | 50 |
| 11.5 | Notice of Third-Party Claims; Assumption of Defense | 51 |
| 11.6 | Settlement or Compromise | 51 |

# TABLE OF CONTENTS
(continued)

| | | Page |
|---|---|---|
| 11.7 | Disclaimer of Warranties | 51 |
| ARTICLE 12 | DISPUTES; GOVERNING LAW | 52 |
| 12.1 | Informal Dispute Resolution | 52 |
| 12.2 | Arbitration | 53 |
| 12.3 | Litigation | 54 |
| 12.4 | Continued Performance | 55 |
| 12.5 | Governing Law | 55 |
| ARTICLE 13 | MISCELLANEOUS | 55 |
| 13.1 | Interpretation | 55 |
| 13.2 | Notices | 56 |
| 13.3 | Entire Understanding | 57 |
| 13.4 | Costs and Expenses | 57 |
| 13.5 | Amendment | 57 |
| 13.6 | Severability | 57 |
| 13.7 | Exhibits | 58 |
| 13.8 | Language | 58 |
| 13.9 | Reproduction of Documents | 58 |
| 13.10 | Further Agreements | 58 |
| 13.11 | No Third-Party Beneficiaries | 58 |
| 13.12 | Waivers | 58 |
| 13.13 | Publicity | 58 |
| 13.14 | Counterparts | 59 |
| 13.15 | Offset | 59 |

# SERVICING RELATIONSHIP AGREEMENT

This SERVICING RELATIONSHIP AGREEMENT, dated as of September 10, 2008, is by and between COUNTRYWIDE HOME LOANS SERVICING LP, a Texas limited partnership ("Countrywide"), and GREENPOINT MORTGAGE FUNDING, INC., a New York corporation ("GPM").

## RECITALS

WHEREAS, GPM was formerly in the business of originating, and continues to be in the business of servicing on behalf of its Affiliates and third parties, residential and commercial mortgage loans and pools of residential and commercial mortgage loans;

WHEREAS, GPM desires to have Countrywide subservice or service such pools of mortgage loans pursuant to (i) in the case of Mortgage Loans not owned by GPM or one of its Affiliates, the Subservicing Agreement (as defined below), and (ii) in the case of Mortgage Loans owned by GPM or one of its Affiliates, the HFI Servicing Agreement (as defined below);

WHEREAS, Countrywide desires to assume such servicing and subservicing responsibilities; and

WHEREAS, the parties desire to establish certain aspects of the relationship among the parties contemplated by the Subservicing Agreement and HFI Servicing Agreement.

NOW, THEREFORE, in consideration of the foregoing recitals and other good and valuable consideration, the adequacy of which the parties hereby acknowledge, the parties agree as follows:

## ARTICLE 1

## DEFINITIONS

For purposes of this Agreement, the following capitalized terms shall have the respective meanings set forth or referenced below:

1.1 "1098 Fee" means the fee set forth on Exhibit 6.4.

1.2 "AAA" has the meaning set forth in Section 12.2.

1.3 "Affiliate" means, with respect to any specified Person, any other Person controlling or controlled by or under common control with such specified Person. For the purposes of this definition, "control", when used with respect to any specified Person, means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

1.4 "Acceptable Standard Servicing Procedures" means, with respect to any Mortgage Loan being subserviced pursuant to the Subservicing Agreement, the Acceptable Standard

1.59  "Impounded Mortgage Loan" means any Mortgage Loan for which the related Mortgagor is required to escrow payments of taxes, insurance and other obligations related to the Mortgage Loan or the Mortgaged Property.

1.60  "Indemnified Person" means the Person or Persons entitled to, or claiming a right to, indemnification under Article 11.

1.61  "Indemnifying Person" means the Person or Persons claimed by the Indemnified Person to be obligated to provide indemnification under Article 11.

1.62  "Initial Bulk Portfolio" means the portfolio of Mortgage Loans that, as of the Closing Date, are either owned by GPM or one of its Affiliates or being serviced by GPM on behalf of a third Person.

1.63  "Initial Servicing Transfer Date" means, for any Mortgage Loan in the Initial Bulk Portfolio, the date (which shall not be before the Closing Date or later than December 31, 2008 and which shall be the 1st or the 16th day of a month or, if any such day is not a Business Day, the next succeeding Business Day) specified as the Initial Servicing Transfer Date in written notice from GPM to Countrywide stating that GPM desires to have Countrywide subservice or service such Mortgage Loan pursuant to the Subservicing Agreement or HFI Servicing Agreement, as applicable.

1.64  "Intellectual Property" has the meaning set forth in Section 5.5(b)(i).

1.65  "Judgments" means any judgments, injunctions, orders, decrees, writs, rulings or awards of any Governmental Authority of competent jurisdiction.

1.66  "Lien" means, for any property or asset of a Person, any lien, security interest, mortgage, pledge or encumbrance in, of or on such property or asset in favor of any other Person.

1.67  "Limited Vendor" means any Vendor who is or could reasonably be expected to be in possession of GPM Customer Information.

1.68  "Loss" or "Losses," in respect of any matter, event or circumstance, means any and all liabilities, obligations, damages, awards, Judgments, losses, settlement payments, reasonable costs and reasonable expenses (including reasonable attorney's and paralegal fees), fines or penalties, in each case whether known or unknown, suspected or unsuspected.

1.69  "Manual Data Back-Fill Fee" means the fee set forth on Exhibit 6.4.

1.70  "MERS Registration Fee" means the fee set forth on Exhibit 6.4.

1.71  "MERS Transfer Fee" means the fee set forth on Exhibit 6.4.

1.72  "Mortgage Files" means, as applicable, Mortgage Files as defined in the Subservicing Agreement, Mortgage Files as defined in the HFI Servicing Agreement or both.

1.115 "Vendor" means any vendor, subcontractor or other Person that is not a Subservicer of Mortgage Loans and who only performs servicing obligations hereunder for Countrywide or any Subservicer under the direction or authority of Countrywide or such Subservicer and that either (i) does not perform one or more discrete functions identified in Item 1122(d) of Regulation AB or (ii) would not be required to be separately identified as a subservicer or vendor in a servicing assessment or attestation under Item 1122 of Regulation AB with respect to Countrywide or such Subservicer.

## ARTICLE 2

## TRANSFER OF SERVICING

2.1   Initial Servicing Transfer.   On or before December 31, 2008, GPM will deliver to Countrywide one or more notices covering the transfer of the servicing or subservicing, as applicable, of the Initial Bulk Portfolio to Countrywide; provided that GPM shall not be required to deliver any such notice with respect to any portion of the Initial Bulk Portfolio for which GPM has not received a required Consent to transfer. GPM will give Countrywide notice of each Initial Servicing Transfer Date no less than thirty (30) calendar days prior thereto (which Initial Servicing Transfer Date may be extended or withdrawn by GPM after an initial notice has been given). On and after the applicable Initial Servicing Transfer Date, Countrywide hereby agrees to subservice or service, as applicable, the Active Mortgage Loans pursuant to the Subservicing Agreement or HFI Servicing Agreement, as applicable and to subservice or service, as applicable, the Non-Active Mortgage Loans pursuant to Section 5.21(b) hereof (until, as to any Mortgage Loan, Countrywide is terminated as contemplated hereby or by any Related Agreement). For each Mortgage Loan which Countrywide agrees to subservice or service pursuant to this Section 2.1, GPM shall deliver complete and accurate preliminary Mortgage Loan Data for each Mortgage Loan to Countrywide no later than twenty-five (25) calendar days prior to the applicable Initial Servicing Transfer Date and complete and accurate final Mortgage Loan Data for each Mortgage Loan to Countrywide no later than one (1) Business Day after the applicable Initial Servicing Transfer Date, in each case through an Excel file (or by other mutually agreed upon format). GPM shall be responsible for (i) correcting any data deficiencies identified by Countrywide with respect to the Mortgage Loan Data theretofore provided to Countrywide by GPM with respect to the related Mortgage Loans and (ii) re-transmitting correctly any Mortgage Loan Data found to be deficient as contemplated by the foregoing clause (i) within two (2) Business Days after GPM's receipt of Countrywide's notification of deficiency and Countrywide shall be responsible for correcting such deficiencies. Countrywide shall be entitled to charge GPM a Manual Data Back-Fill Fee as set forth on Exhibit 6.4 if any Mortgage Loan Data deficiencies are not re-transmitted to Countrywide by GPM pursuant to this Section 2.1 which, as a result, requires Countrywide to manually extract Mortgage Loan Data from the Mortgage Loan Documents.

2.2   Flow Servicing Transfers.   With respect to each Flow Servicing Transfer Date, GPM shall deliver or cause to be delivered to Countrywide, a notification letter for the related Mortgage Loans in accordance with the terms of this Agreement and in a form reasonably acceptable to Countrywide identifying the additional Active Mortgage Loans to be serviced under the Subservicing Agreement or HFI Servicing Agreement, as applicable, and Non-Active Mortgage Loans to be serviced pursuant to Section 5.21(b) hereof, effective as of such Flow

Servicing Transfer Date. Each such notice (which may be extended or withdrawn by GPM) shall be delivered at least twenty-five (25) Business Days prior to the Flow Servicing Transfer Date (for transfers from third parties) and two (2) Business Days prior to the Flow Servicing Transfer Date (for internal transfers). Countrywide shall provide its written approval or denial within two (2) Business Days of receipt of notification, which approval shall not be unreasonably withheld. On and after the applicable approved Flow Servicing Transfer Date, Countrywide hereby agrees to subservice or service, as applicable, the Active Mortgage Loans pursuant to the Subservicing Agreement or HFI Servicing Agreement, as applicable and to subservice or service, as applicable, the Non-Active Mortgage Loans pursuant to Section 5.21(b) hereof (until, as to any such Mortgage Loan, Countrywide is terminated as contemplated hereby or by any Related Agreement). With respect to Flow Servicing Transfers from third parties, GPM shall furnish or cause to be furnished to Countrywide (via Microsoft Excel file or any other mutually agreed upon format) complete and accurate Mortgage Loan Data. GPM shall be responsible for (i) correcting any data deficiencies identified by Countrywide with respect to the Mortgage Loan Data theretofore provided to Countrywide by GPM with respect to the related Mortgage Loans and (ii) re-transmitting correctly any Mortgage Loan Data found to be deficient as contemplated by the foregoing clause (i) within two (2) Business Days after GPM's receipt of Countrywide's notification of deficiency and Countrywide shall be responsible for correcting such deficiencies. Countrywide shall be entitled to charge GPM a Manual Data Back-Fill Fee as set forth on Exhibit 6.4 if any Mortgage Loan Data deficiencies are not re-transmitted to Countrywide by GPM pursuant to this Section 2.2 which as a result, requires Countrywide to manually extract Mortgage Loan Data from the Mortgage Loan Documents.

2.3   Conditions Applicable to All Servicing Transfers.

(a)   Delivery of Servicing Files. GPM shall provide Countrywide, no later than five (5) Business Days after the applicable Servicing Transfer Date (and, if possible, at least fifteen (15) days before the applicable Servicing Transfer Date), imaged copies (if imaged copies are available) of all Servicing Files, Mortgage Files and Mortgage Loan information in GPM's possession or control (collectively, the "Delivered Information") with respect to such Mortgage Loan being subserviced or serviced by Countrywide as contemplated by this Article 2. GPM shall provide to Countrywide, within forty-eight (48) hours after receiving written request from Countrywide, physical copies of any Servicing Files, Mortgage Files or Mortgage Loan Information in GPM's possession or control and that are so requested. Any costs and expenses to deliver such Delivered Information shall be borne by GPM and any costs and expenses to maintain or make copies (electronic or otherwise) of the Delivered Information for Countrywide's use in connection with servicing the Mortgage Loans shall be borne by Countrywide.

(b)   Maintenance of Files. Countrywide shall be responsible for retaining the Delivered Information and any information about the Mortgage Loans which is prepared by or comes into the possession of Countrywide in connection with the transactions contemplated hereby (the "Generated Information") during the term of this Agreement. Upon the liquidation or payoff of a Mortgage Loan, Countrywide shall retain the copy of the applicable Delivered Information and Generated Information during the term of this Agreement. After the term of this Agreement, Countrywide shall no longer have an obligation to retain the copy of the Delivered Information and Generated Information and shall return such copy to GPM at Countrywide's

sole cost and expense. Countrywide shall maintain adequate records of each Mortgage Loan, including Mortgage Loan Documents, pursuant to Applicable Law. All rights to and interest in the Delivered Information and Generated Information shall immediately vest in GPM and the Delivered Information and Generated Information shall be held and maintained in trust by Countrywide at the will of GPM and in a custodial capacity only. The documents comprising the Delivered Information or Generated Information shall be appropriately identified from the other books and records of Countrywide and shall be appropriately marked to clearly reflect the ownership interest of GPM in such Delivered Information and Generated Information. Countrywide at its sole discretion may microfilm or image certain Mortgage Loan documents as it deems necessary for servicing. Countrywide shall release its custody of any such documents only in accordance with the terms of the related Subservicing Agreement or HFI Servicing Agreement, as applicable.

(c) Document Procurement. Countrywide shall not be responsible for tracking and procuring any documents missing from the files delivered pursuant to Section 2.3(a), but will notify GPM or GPM's custodian to the extent that it becomes aware of any missing collateral documents which are required in connection with such servicing and administration of the Mortgage Loans contemplated hereby. GPM shall pay Countrywide the Document Procurement Fee as set forth on Exhibit 6.4 to the extent GPM or GPM's custodian is unable to provide such missing collateral documents to Countrywide. Countrywide shall comply with GPM's reasonable requests for originals or copies of documents contained in the Delivered Information or Generated Information.

(d) Notice to Mortgagors. With respect to each Mortgage Loan, GPM shall cause to be provided to each Mortgagor a joint "Welcome Letter" and "Goodbye Letter" in such form as is reasonably acceptable to each of GPM and Countrywide and is in accordance with RESPA, Acceptable Standard Servicing Procedures and Applicable Law. With respect to any HELOCs, such letter shall advise the Mortgagor that their HELOC draw checks will not be valid after the Servicing Transfer Date and further advising the Mortgagor that they will be receiving new HELOC draw checks from Countrywide within ten (10) days following the Servicing Transfer Date.

(e) Tax Service Contracts. To the extent that GPM has not assigned a Tax Service Contract with respect to a First Lien Mortgage Loan being subserviced or serviced by Countrywide pursuant to a Related Agreement to Countrywide, Countrywide shall obtain a Tax Service Contract on such First Lien Mortgage Loan and GPM shall pay Countrywide a Tax Service Contract Fee as set forth in Exhibit 6.4. If a third party acquires the servicing rights with respect to any such Mortgage Loan, Countrywide shall assign the rights to the Tax Service Contract related to such Mortgage Loan to such Person.

(f) Flood Service Contracts. To the extent that GPM has not assigned a Flood Service Contract with respect to a First Lien Mortgage Loan being subserviced or serviced by Countrywide pursuant to a Related Agreement to Countrywide, Countrywide shall obtain a Flood Service Contract on such First Lien Mortgage Loan and GPM shall pay Countrywide a Flood Service Contract Fee as set forth in Exhibit 6.4; provided, however, that the Flood Service Contract Fee shall only be applicable to Mortgage Loans without life of loan Flood Service Contracts. If a third party acquires the servicing rights with respect to any such Mortgage Loan,

Countrywide shall assign the rights to the Flood Service Contract related to such Mortgage Loan to such Person.

(g) Audit of Transfers. As promptly as possible following each Servicing Transfer Date, Countrywide shall audit the calculation, as of the Servicing Transfer Date (the "Servicing Transfer Date Audit Report"), of (i) the outstanding stated principal balance of all Mortgage Loans under transferred to Countrywide as of the related Servicing Transfer Date, (ii) the outstanding Advances, in each case including the calculation of collections and distributions, and (iii) Custodial Account and Escrow Account balances as of the related Servicing Transfer Date. Countrywide shall provide GPM with the Servicing Transfer Date Audit Report as promptly as possible after Countrywide completes the Servicing Transfer Date Audit Report, but in no event more than sixty (60) Business Days (or ninety (90) days in connection with the audit of Prior Servicer Advances) after the related Servicing Transfer Date, and GPM shall have the right to dispute in good faith all matters included in the Servicing Transfer Audit Report in accordance with Article 12.

2.4 Reliability of Information. Countrywide may rely on all data and materials relating to Mortgage Loans supplied to Countrywide as contemplated by this Article 2 by GPM and the authenticity and accuracy of such data and materials, including any signatures contained therein. Countrywide shall not be obligated to conduct an independent investigation of any such data or materials or audit any such data or materials that, and may rely on the authenticity and accuracy of such data and materials as provided, including any signatures contained therein and, except as expressly provided in this Agreement or a Related Agreement, Countrywide shall not be held accountable for data integrity, missing information or missing documents that prevent the boarding of a Mortgage Loan to Countrywide's mortgage loan administration system. Countrywide will notify GPM promptly after it discovers any such data or materials that do not satisfy Countrywide's data reliability rules relating to authenticity and accuracy. Provided Countrywide delivers prior notification to GPM of a material data deficiency discovered within (30) thirty days after the Servicing Transfer Date and such error was not caused by Countrywide's negligence, Countrywide shall be entitled to charge GPM a Post-Boarding Master Data File Correction Fee as set forth on Exhibit 6.4 as compensation for Countrywide correcting Mortgage Loan data on its loan administration system caused by missing or inaccurate data provided to Countrywide.

2.5 Escrow Obligations. In connection with Impounded Mortgage Loans being subserviced or serviced by Countrywide as contemplated by this Article 2, GPM shall (i) cause all taxes and assessments with respect to which the related tax bill is due within thirty (30) days following the related Servicing Transfer Date to be paid prior to the related Servicing Transfer Date, and (b) cause all hazard, flood, earthquake, PMI Policy and other insurance premiums that are due on or prior to the thirtieth (30th) day following the related Servicing Transfer Date to be paid on or prior to the related Servicing Transfer Date. GPM shall be responsible for any losses, including tax penalties (including any loss of discount for which any Mortgagor or any third party for the benefit of the Mortgagor has a legal claim), arising in connection with any Mortgage Loan for which GPM failed to pay taxes as required by this Section 2.5.

2.6 MERS. To the extent GPM requests Countrywide to register a Mortgage Loan with Mortgage Electronic Registration System, Inc., GPM shall transfer or cause to be

party and its Affiliates or (c) enforcing its rights under this Agreement or any Related Agreement.

13.14 <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, any may be executed and delivered by facsimile, and all such counterparts and facsimiles together shall constitute one and the same instrument.

13.15 <u>Offset</u>. Notwithstanding anything to the contrary contained in this Agreement or any Related Agreement, except as expressly provided in <u>Article 6</u>, neither party (a "<u>Paying Party</u>") shall have any right to, and the Paying Party shall not, offset against any amount payable hereunder or under any Related Agreement to the other party (the "<u>Payee Party</u>"), or otherwise reduce any amount payable hereunder or under any Related Agreement to the Payee Party as a result of, any amount owing by the Payee Party or any of its Affiliates to the Paying Party or any of its Affiliates.

IN WITNESS WHEREOF, the parties hereto have caused this Servicing Relationship Agreement to be executed and delivered as of the date first above written.

GREENPOINT MORTGAGE FUNDING, INC.

By: *[signature]*
Name: Richard D. Fairbank
Title: CEO, Capital One Financial Corporation

COUNTRYWIDE HOME LOANS SERVICING
LP, by Countrywide GP LLC, as its General Partner

By: *[signature]*
Name: George Scheback
Title: Managing Director